**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MURTUZA KHAN,<br><br>        Plaintiff,<br><br>    v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>        Defendant. | No. 20 CV 5833<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

In 2013, Murtuza Khan purchased a property in Des Plaines, Illinois. Three years later, Ocwen Loan Servicing, LLC—the company that negotiated the sale to Khan on behalf of the previous owner but had no remaining interest in the property—filed two documents with the county recorder's office. The first purported to release a mortgage on the property that predated Khan's purchase; the second filing sought to correct the first and stated that the mortgage remained outstanding and in full effect. That statement was false (a 2012 foreclosure extinguished the mortgage at issue). When Khan tried to sell the property in 2018, he discovered Ocwen's 2016 filings, which placed a cloud on his title and delayed the sale, resulting in extra costs and missed opportunities for Khan. He sued Ocwen (now PHH Mortgage Corporation by merger), bringing claims under slander of title, gross negligence, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. Ocwen moves to dismiss the ICFA claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is denied.

I.  **Legal Standards**

A complaint must contain a short and plain statement that plausibly suggests a right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court accepts the complaint's factual allegations as true and draws all reasonable inferences in plaintiff's favor, but it need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

II. **Background**

Murtuza Khan is a real estate developer who buys, rehabs, and sells properties in and around Chicago. [1-1] ¶ 1.[1] This case is about one of those properties, located in Des Plaines, Illinois. *Id.* ¶ 5. Ocwen Loan Servicing, LLC, serviced a prior loan on the property until 2012, when a bank foreclosed on the mortgage and took title. *Id.* ¶¶ 5–7. The next year, Khan agreed to purchase the property from the bank. Ocwen, now acting as the bank's attorney-in-fact, negotiated the sale contract, prepared and executed a special warranty deed passing title to Khan, and recorded the deed with the Cook County Recorder of Deeds. *Id.* ¶¶ 9–10.

Three years later, Ocwen (now acting on behalf of Mortgage Electronic Registration Systems) recorded a release of the extinguished mortgage it had serviced

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the complaint, [1-1] at 7–15.

2

until 2012. *Id.* ¶ 11. In November 2016, Ocwen reversed course and recorded another document titled "Incorrect Release of Mortgage." *Id.* ¶ 12. The filing stated that the previous release had been recorded in error and falsely claimed that the extinguished mortgage "remain[ed] outstanding and in full force and effect." *Id.*

By May 2018, Khan was ready to sell the property. He entered into a contract with a cash buyer, and anticipated closing one week later. *Id.* ¶ 13. Khan first learned of Ocwen's filings when his attorney pulled the title records in connection to the deal. *Id.* ¶ 14. Khan spent weeks trying to get Ocwen to remove the cloud from his title. *Id.* ¶¶ 16–17. Ocwen corrected the record in early July, more than six weeks after Khan notified the company of its error. *Id.* ¶ 18. Khan's sale of the property closed a few weeks later, more than two months later than originally planned. *Id.* ¶ 19. During that time, Khan had to pay additional real estate taxes, insurance, landscaping, utilities, and attorney's fees. *Id.* ¶ 20. Khan also claims he lost profits and opportunity costs; for example, he says that he missed out on purchasing a Chicago property because he needed the proceeds from closing to make an offer. *Id.* ¶¶ 21–26.

Khan sued Ocwen in the Circuit Court of Cook County. PHH, successor by merger to Ocwen, timely removed to federal court. *See* [1] at 1–4.[2] Khan brings claims under Illinois law for slander of title (Count I), gross negligence (Count II), and consumer fraud (Count III). PHH moves to dismiss Count III.[3]

---

[2] The court has diversity jurisdiction under 28 U.S.C. § 1332. Khan is a citizen of Illinois, PHH is a citizen of New Jersey, and the amount in controversy exceeds $75,000.

[3] PHH originally sought to dismiss Count II but has since withdrawn that argument. [17] at 1 n.1.

3

### III. Analysis

The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices … in the conduct of any trade or commerce." 815 ILCS 505/2. The Act aims "to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 20. To state an ICFA claim, a plaintiff must plead "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019).

The Act defines "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and … directly or indirectly affecting the people of this State." 815 ILCS 505/1(f). An ICFA cause of action is available to "[a]ny person who suffers actual damage as a result of a violation." 815 ILCS 505/10a(a). But a claim must be brought within three years after the cause of action accrues. 815 ILCS 505/10a(e).

PHH argues that Khan's ICFA claim should be dismissed for three reasons: (1) Ocwen's acts of recording the release documents did not occur in trade or commerce; (2) Khan's allegations fail to implicate broader consumer-protection concerns; and (3) the claim is barred under the statute of limitations.

4

### A. Trade or Commerce

Because Ocwen's false attempt to record a mortgage was not an advertisement, offer for sale, or sale of any service or property, the issue is whether its 2016 filing falls within the "distribution of any" of its services. 815 ILCS 505/1(f). "This broad language evidences an intent that the Act have correspondingly broad applicability." *Scott v. Ass'n for Childbirth at Home, Int'l*, 88 Ill.2d 279, 284 (1981) (citing 815 ILCS 505/1(f)); *see also Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 503 (1996) (ICFA should be liberally construed). Yet ICFA's reach is not limitless, and the mere fact that an entity does business in Illinois does not convert its every act into conduct in trade or commerce. *See Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 595–96 (7th Cir. 2017) (refusing to extend "trade" or "commerce" to cover an insurer's failure to accurately disclose policy limitations in civil litigation); *G & G Closed Circuit Events, LLC v. Castillo*, 327 F.Supp.3d 1119, 1133–34 (N.D. Ill. 2018) (litigation conduct, including "shady practices" in attempt to extract settlements, was not part of defendant's trade or commerce under ICFA); *Falk v. Perez*, 973 F.Supp.2d 850, 868 (N.D. Ill. 2013) (officers' eviction of plaintiff was not conduct in trade or commerce).

The complaint alleges that Ocwen engaged in trade or commerce when it recorded title documents with the county recorder. [1-1] ¶ 38. PHH counters that Ocwen's interest in the property ceased with the sale to Khan in 2013, so the 2016 filings fell outside the realm of trade or commerce. Further, it says, the filings were

not part of an attempt to advertise, offer to sell, sell, or distribute any of its services or property.

I disagree. Ocwen recorded the loan release and false correction within the regular distribution of its services as a mortgage servicer, and therefore, in the course of trade or commerce. Specifically, the 2016 recorded documents were part of Ocwen's services on behalf its client, mortgage-holder MERS. *See* [1-1] at 26, 30. Public records show that, in 2016, Ocwen recorded releases for hundreds of loans in Cook County alone.[4] A reasonable chain of inferences follows: Ocwen's services on behalf of clients like MERS included recording releases and related documents; the act of recording documents was part of its distribution of this service; it directly or indirectly affected the people of Illinois, namely Khan and other title holders, and it therefore amounted to the conduct of trade or commerce under ICFA. *See People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill.2d 1, 30 (1991) ("As a result of selling its collection services to the City, Datacom mailed several demand notices to, and collected money from, hundreds of thousands of people in this State. These actions constituted the sale and distribution of services which directly or indirectly affected the people of Illinois … and thus amounted to the conduct of trade or commerce as defined by the Consumer Fraud Act.").

---

[4] I may take judicial notice of public records "when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Community Health Systems, Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). Khan attached to its response brief a screenshot from the website of the Cook County Recorder of Deeds, [14-1] at 1. PHH does not question the accuracy or authenticity of these public records, so I take judicial notice of them.

That Ocwen erroneously recorded the document when it had no actual interest in the property does not alter the fact that its wrongful filing was part of the routine distribution of its services. *See Datacom Systems*, 146 Ill.2d at 29–30 ("[ICFA] forbids unfair or deceptive practices and states that such practices are unlawful when done in the course of *any* trade or commerce." (emphasis added)). Accordingly, the filings fall within the broad scope of trade or commerce under the ICFA.

PHH principally relies on *G & G Closed Circuit Events, LLC v. Castillo*, 327 F.Supp.3d 1119 (N.D. Ill. 2018), but that case is distinguishable. There, the ICFA claim focused on a company's litigation tactics—not its underlying business—which was too attenuated from the company's trade or commerce. *See id.* at 1133–34. Khan's ICFA claim, on the other hand, directly implicates Ocwen's trade or commerce: its mortgage servicing business that involves recording loan releases. Ocwen's wrongful filings occurred in the course of trade or commerce.

### B. Consumer Protection

Next, PHH says that Khan's claim should be dismissed because it does not implicate broader consumer protection concerns. But Khan need not raise larger consumer protection issues to state an ICFA claim. While "any person" injured by a violation may bring a claim, the Act "applies to consumer transactions or those having a consumer nexus." *Roppo*, 869 F.3d at 595. A consumer-plaintiff need not prove a "public injury, a pattern, or an effect on consumers generally," and may "state a claim based upon a single, isolated injury" based "solely upon the plaintiff's own injury." *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996). When

7

a plaintiff is not a consumer, on the other hand, the plaintiff "must show a 'nexus between the complained of conduct and consumer protection concerns.'" *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 823 (7th Cir. 2018) (citing *Athey*, 89 F.3d at 437). Courts employ this so-called "consumer-nexus test," for example, when a plaintiff is a business or a claim stems from a breach of contract, because "Illinois courts are skeptical of business-v.-business ICFA claims when neither party is actually a consumer in the transaction." *Schnuck Markets*, 887 F.3d at 823.

Here, Khan pleaded that he is a consumer. PHH's opening brief argued that Khan failed to raise a broader consumer issue, but it did not dispute Khan's status as a consumer. Because PHH argued that Khan is not a consumer for the first time in its reply brief, the argument is waived. *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (arguments raised in reply briefs for the first time may be waived). Accordingly, for the purposes of the present motion, that Khan did not allege an injury affecting consumers more generally is irrelevant. The Act may remedy a single error affecting only the consumer. That is what Khan alleged here. He need not do more. PHH can dispute Khan's consumer status at summary judgment or trial.

### C. Statute of Limitations

Finally, PHH asserts that Khan's ICFA claim is untimely. Khan sued Ocwen in 2020, and the statute of limitations is three years, so his claim is barred if he had notice of Ocwen's conduct when it filed the incorrect-release form in 2016.

8

The statute of limitations is an affirmative defense and generally not an appropriate reason for dismissal at this stage, unless "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

An ICFA claim must be filed within three years after the cause of action accrues. *See* 815 ILCS 505/10a(e). The claim accrues "when the plaintiff 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'" *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (quoting *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 415 (1981)). The purpose of this "discovery rule" is to "alleviate what has been viewed as harsh results … from the literal application of the statute." *Knox College*, 88 Ill.2d at 414. The limitations period therefore begins to run when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Id.* at 416. Ordinarily, this presents a question of fact. *Id.* at 416–17. But courts "can

9

determine when the limitations period began if the facts are undisputed and only one answer is reasonable." *American Family Mut. Ins. Co. v. Krop*, 2018 IL 122556, ¶ 21.

The clock starts when a plaintiff has sufficient notice of his injury and its wrongful cause. Notice may be actual or constructive: actual notice is knowledge that the plaintiff possesses, while constructive notice "is knowledge that the law imputes … whether or not [the plaintiff] had actual knowledge." *US Bank Nat. Ass'n v. Villasenor*, 2012 IL App (1st) 120061, ¶ 59; *see also LaSalle Nat. Bank v. Dubin Residential Communities Corp.*, 337 Ill.App.3d 345, 352 (1st Dist. 2003).

There are two types of constructive notice: record notice and inquiry notice. *Hachem v. Chicago Title Ins. Co.*, 2015 IL App (1st) 143188, ¶ 27. Illinois property law ascribes record notice to subsequent purchasers and creditors. 765 ILCS 5/30; *Loehde v. Halsey*, 88 Ill.App. 452, 457 (1st Dist. 1899) ("[T]he record is constructive notice to creditors and subsequent purchasers only."). Record notice "imputes to a purchaser knowledge that could be gained from an examination of the grantor-grantee index in the office of the Recorder of Deeds, as well as the probate, circuit, and county court records for the county in which the land is situated." *In re Crane*, 742 F.3d 702, 706–07 (7th Cir. 2013) (citation omitted). For inquiry notice to apply, "the subsequent purchaser must in fact have actual knowledge of some relevant piece or pieces of information that would put him or her on inquiry." *Peoples Nat. Bank, N.A. v. Banterra Bank*, 719 F.3d 608, 614–15 (7th Cir. 2013). In other words, purchasers and creditors have a duty to inspect relevant property records before buying or lending, and if they fail to do so, they receive no protection. *See Eckland v.*

10

*Jankowski*, 407 Ill. 263, 267 (1950) ("It is the duty of a purchaser of land to examine the record and he is chargeable with notice of whatever is shown by the record.").

More generally, while public records may serve as constructive notice absent affirmative acts of deception by an adverse party, *see Ropiy v. Hernandez*, 363 Ill.App.3d 47, 54–55 ( 1st Dist. 2005), not all public records automatically constitute such notice. Deeds recorded outside the chain of title are public records, for example, but a title owner is "under no obligation to bring suit to set aside recorded deeds not connected with their chain of title … [and such filings do] not constitute notice to [the owner] of their existence." *Manson v. Berkman*, 356 Ill. 20, 25 (1934).

Instead, for a public record to serve as constructive notice, a property owner must be "given reason for inquiry or clearly put on notice." *LaSalle*, 337 Ill.App.3d at 354. For example, a developer has a reason to check the status of zoning rules, including proposed zoning changes, before making substantial investments in a property. *See Ropiy*, 363 Ill.App.3d at 56. But a property owner is not charged with notice of conveyances in the public record when there are "no triggering factors to raise suspicion and/or investigation" of the record. *LaSalle*, 337 Ill.App.3d at 355. In short, "[p]ublic records operate as constructive notice to those persons only, who, for their own protection, are bound to search for them." *Garrett v. Simpson*, 115 Ill.App. 62, 64 (1st Dist. 1904) ("To charge such other persons with knowledge the notice must be actual, not constructive.").

The law of laches—the statute of limitations' counterpart in equity—is instructive. *See Sundance Homes, Inc. v. City of DuPage*, 195 Ill.2d 257, 270 (2001).

11

Under Illinois's laches caselaw, whether a public record serves as constructive notice to a property owner is a fact-specific inquiry. Multiple public records over an extended time generally constitute constructive notice. *See Pyle v. Ferrell*, 12 Ill.2d 547, 554 (1958) (plaintiff, aware of his interest in estate for over twenty years, had constructive notice when public records showed defendant had purchased the estate for delinquent taxes, received a tax deed, paid taxes on it for twenty consecutive years). But public records do not necessarily constitute constructive notice when a plaintiff has no duty or reason to search them. *See Tarpoff v. Karandjeff,* 17 Ill.2d 462, 471 (1959) (no reason to excite suspicion in plaintiff to search public deed records and make inquiry); *Moore v. Moore*, 15 Ill.2d 239, 243–44 (1958) (husband's public recording of deed ten months before marriage did not constitute constructive notice to plaintiff-wife, who was under no obligation to "search the records to determine the truth or falsity of representations concerning ownership of real estate"). So even when matters are of public record, a property owner does not necessarily have constructive notice of such records if he has no duty or reason to search them.

All of this leads me to conclude that the statute of limitations does not provide grounds for dismissing Khan's complaint. Khan alleges that he had no actual knowledge of the wrongful records until 2018. The complaint does not suggest that Khan was aware of facts that reasonably should have led him to question his title earlier. While Khan had a duty to inspect deed records before he purchased the property in 2013, he was under no such duty to continue doing so after he became the record owner. Absent knowledge of some fact to arouse suspicion, he had no reason

12

to check his title records in 2016 or 2017. Principles of Illinois law do not support a per se rule that a title holder like Khan is charged with constructive notice based on a single, unauthorized filing simply because it is a public record. In other words, the incorrect-release filing, on its own, does not establish as a matter of law that in 2016 Khan possessed "sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College*, 88 Ill.2d at 416. And without a clear answer under Illinois law, it is not a federal court's "role to break new ground in state law." *Roppo*, 869 F.3d at 596 (quoting *Lopardo v. Fleming Cos., Inc.*, 97 F.3d 921, 930 (7th Cir. 1996)).

The cases on which PHH relies do not move the needle. PHH says that *Diotallevi v. Diotallevi*, 2013 IL App (2d) 111297, is "controlling," but it is not, and in any event, it is inapt. There, several siblings sued their brother and his wife for breaching a contractual promise to "modify the titles to [two properties] to reflect plaintiffs' interest." *Id.* ¶ 35. The court refused to apply the discovery rule because plaintiffs' alleged injury—defendants' failure to take "binding action in recognition of plaintiffs' interest in the [properties]"—was as discoverable in 2001 (following the signing of the contract) as it was in 2010 (when plaintiffs claimed they first had notice). *Id.* ¶ 37. The court reasoned that the "titles to the properties … were matters of public record, and therefore plaintiffs knew or reasonably should have known by 2001 that they had been injured and that their injury was wrongfully caused." *Id.* ¶ 35. Next, in *Lane v. Deutsche Bank, AG*, 2015 IL App (1st) 142968, a plaintiff sued his former accounting firm and a bank to recover losses he suffered from defendants'

13

illegitimate tax-shelter scheme. The court held that the plaintiff's claims (filed in 2014) were untimely, identifying three events (between 2004–2008) that should have put the plaintiff on notice of the tax shelter's illegitimacy: (1) plaintiff's participation in litigation against the accounting firm, (2) an IRS letter informing plaintiff that it was auditing the entity through which his losses flowed, and (3) the conviction of the attorney who had prepared a letter to plaintiff on the legality of the tax shelter for defrauding the IRS by authoring false opinion letters. *Id.* ¶ 27.

Neither case supports a rule that a property owner, under no duty to inspect title records, is imputed with knowledge of wrongfully recorded instruments as soon as they are recorded. The *Diotallevi* plaintiffs had an existing contractual relationship with the defendants and reason to check public records to ensure compliance with the contract. Khan had neither. He purchased the property for cash and had no relationship with Ocwen after that. He certainly had no reason to believe that Ocwen—which no longer held any interest in the property—would record instruments to improperly cloud his title. The *Lane* plaintiff, moreover, was aware of multiple facts that should have led him to inquire about the propriety of his losses. Based on the complaint, Khan had no knowledge of any facts that would have led him to suspect that Ocwen placed a cloud on his title.

Discovery may produce evidence to suggest that Khan had notice of the wrongful filings before 2018. Under Illinois's discovery rule, however, Khan has not affirmatively pleaded himself out of court.

## IV. Conclusion

The motion to dismiss the ICFA claim, [10], is denied. Defendant must answer the complaint by April 20, 2021. A status report on discovery and settlement progress remains due on April 7, 2021.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: March 30, 2021

15